7-0-7-8. Also will be the Department of Veterans Affairs. Mr. Carpenter. Thank you very much, Your Honor. If the court please, Kenneth Carpenter appearing on behalf of Mr. Daryl Pouncil. Mr. Pouncil is here on a quest... Sure. All right. We're just waiting for the noise to die down. Mr. Pouncil is here on a question of whether or not the Veterans Court misinterpreted the provisions of 38 U.S.C. 1154 and 1110. Mr. Pouncil asserts that this appeal is about the difference between the rights afforded under those two statutes. Under 1154B it is the right to a finding of service connection. Under 1110 it is the right to the payment of compensation by the United States. Service connection is only one element in a claim for compensation. It is about the question of incurrence. The original decision, the challenge decision in this matter from 1979, was attacked collaterally on the basis of an allegation of clear and unmistakable error that Mr. Pouncil had not been afforded the benefit of the presumption of service connection under 1154B. The lower court found that it agreed with the board that the presumption could be negated on the basis that he could not ultimately have prevailed on the merits. That, however, is not the question or was not the question in the allegation or request for revision of that 1979 opinion. The request for revision was based upon whether or not the VA did or did not provide to Mr. Pouncil the benefit of that statutory presumption. Now, what benefit does he get from that statutory presumption if not rebutted? He gets the benefit of a finding of service connection. The decision made in 1979 was that he was not entitled to that finding. They did not reach the question of compensation because they disposed of the claim under the theory of service connection and having not met that element. Yes? Can you tell me the medical nexus to establish the disability? To receive compensation under 1110. That's correct, Your Honor. But there is not a question under, or excuse me, there is not an issue under 1154B of compensation. 1154B only deals with and uses the phrase service connection, I believe, on six different occasions and never uses the term compensation. The term compensation and the requirement for what has been judicially created by the Veterans Court of medical nexus applies to the right to the payment of that compensation. When Mr. You still look forward to establishing the medical nexus. That's correct, Your Honor. And in 1979, he received an examination from the VA that said that he had a current disability. The problem was, is had he been afforded the benefit of the presumption of service connection, then the VA would have directed its examiner to presume that Mr. Poncel's nerve problems were incurred during service. And then the question in that examination would have been the question of medical nexus. And if the court examines that VA examination in the record, the court will find that the examiner assumed that Mr. Poncel was there for rating purposes. I'm sorry, Your Honor, did you have a question? I wanted to try a hypothetical one. Fine. I assume we have a veteran, and he claims that he incurred a bullet wound in his foot. Okay. I would think that his testimony that I incurred a bullet wound in my foot in combat in 1967 would prevail unless it was contradicted. That's correct. That would establish service connection for the bullet wound. That's correct. If later his foot is amputated and he would have to show medical connection that the amputation was caused by the bullet wound and not a motorcycle accident. That's right. Isn't that the difference? And I think the VA, the government is basically saying, well, this case is like the amputation. He didn't show medical connection of the amputation to the bullet wound that happened then. And the VA does. That's how they're describing this case. And do you see this case differently? Absolutely, Your Honor. This is an initial claim not based upon the relationship to the bullet wound, but on relationship to the stress that he experienced during service and his reaction to essentially having been shot, whether he actually got shot or not, is not dependent upon what his emotional reaction was. And then whether he had a post-service disability was clearly established by the VA's examiner in 1979. He said he had anxiety neurosis. What was missing from that examination were the magic words that have now been imposed by the Veterans Court for this concept of medical nexus. Medical nexus has its genesis under 1110, because in order to be paid compensation, you have to have a disability that resulted from your in-service injury or disease. In 1979, he said to the Veterans Administration, I have a nervous condition because of my wounds. That's what he said. That's correct, Your Honor. He didn't say, I have post-traumatic stress disorder because of a combat situation in 1967. But that's not the way that they treated it, Your Honor. There is a provision under 38 CFR 3.10a that allows for secondary service connection in exactly that type of circumstance. In that type of circumstance, then the examiner would have been required to answer that question, because that would have been the pivotal question. Is his nervous condition related to his service war wounds? And then he would be entitled to secondary disability compensation. This was a direct service connection claim that should have been handled under the combat presumption. Because he was a combat veteran, he had incurred wounds, and he said ten years afterwards, I now have nerve problems. And I believe I am entitled to compensation for those nerve problems. The first issue is, was he in service? He certainly was. The second issue was, did he incur an injury or disease in service? One could look to the war wounds, but that's not the basis of this claim. The basis of this claim was, did he have a psychological injury that occurred as a result of his military service? And he said that he did, and he believed that he was entitled to that compensation as a result. And Congress has said that you get, as a combat veteran, a presumption that if you say an event took place and there is not clear and convincing evidence to the contrary that it took place, this psychological injury, then you're- That's your definition of a presumption. It's not a- the statute says that lay testimony and so forth of someone will be accepted as fitness efficient. That's correct, and that- Clear and convincing evidence to the contrary. That's not a- that's not really a presumption as we're using that term in other parts of the veterans statute. No, 1154B- We don't want to start confusing those presumptions. No, no. 1154A is the first one with the use of lay evidence. 1154B is the presumption for a combat veteran about the incurrence of an event that took place that resulted in a disease or injury. I don't have anything technical about it except I'm concerned about- Absolutely, but I think that's an important distinction here. It doesn't say presumption in the statute. In 1154A it does not. It does in the- Well, it's- 1154B. It's sufficient or something like that. Yes. You're saying that's a presumption. Well, that's certainly the way in which it has been treated. I believe this court in Collette said that if the veteran satisfies both of the predicate inquiries mandated by the statute, a factual presumption arises that the alleged disease or injury is service-connected, and that's what was denied in 19- If we've already said that, I overlooked that in Collette. I thought that Collette said the other, but go ahead. Well, actually there is some confusing language in Collette, Your Honor, about what does or doesn't constitute what is under this 1154B statute. Yes, Your Honor. It's under a factual predicate, not really a predicate. I believe- I.e. it was caused by the government of Texas. And that's- The regulations. But that's not the factual predicate for 1154B for service connection. For service connection, which is whether there was an incurrence during service, is, in my view, to be presumed under 1154B, if there is satisfactory lay evidence which is not contradicted about the incurrence, the event that took place, the trauma that he experienced, the psychological injury that he says is the genesis of his post-service nerve problems, which then was substantiated as existing in 1979. But the piece that was missing was the 1110 piece. It's our position that under 1154B, had the Veterans Administration correctly applied the presumption or the statute, I should say, in 1979, then the direction to the examiner would have been different. You are directed to presume that he had a psychological injury during service, and your report back to us is simply, does he have a current disability, and is that current disability related to the incurrence that is presumed to have taken place in service? But would the outcome generally be different? It would, Your Honor, because what was decided in 1979 was the denial of compensation on the basis of a lack of service connection. He was entitled to that finding of service connection, and if the 1154B statute had been correctly applied, then the VA would have made that favorable finding of service connection. That is a manifestly different outcome that would have put the veteran in an entirely different position and put the VA in this non-adversarial system in an entirely different position. Because we believe it's inherent in what you get for the 1154B presumption. Simply, Your Honor, because I believe it is inherent in the 1154B statute, as it suggests in Collette, that if you meet the factual predicate, then that's what you get. You get a finding of service connection. Because service connection and not compensation is what's discussed in 1154B. Thank you, Your Honor. May it please the Court. In Mr. Pouncil's opening brief, he proceeded upon the theory that the VA had misinterpreted as a matter of law 1154B. He now essentially concedes that the VA's interpretation of the statute, that being that 1154B relates just to that piece of 1110 of in-service incurrence of a disease or aggravation of a disease or injury. He essentially concedes that interpretation is correct. Now his argument is that by not applying the, we would call it a lessened evidentiary burden rather than a presumption, that by not receiving the benefit of that lessened evidentiary burden through some combination of a failure of the duty to assist, then it's outcome determinative. This is the argument presented in the reply brief. Your Honor, what is the clear and convincing evidence to the contrary of the evidence, contradicting the evidence he gave as to the incurrence? Your Honor, the RO's decision was based on one step before the clear and convincing question, and that is that the facts in the record and Mr. Pouncil's own testimony did not present the type of evidence that gives rise to the application of 1154 in the first place. So because 1154 was not applied in the first place, the VA never got to the step of figuring out whether there was any clear and convincing evidence otherwise. It seems to me that what he's arguing is the trunk, that he's saying, my argument fits into the concept that B refers to what happened then. And I think that's what you are. B is all about what happened back then. Is that true? Yes, Your Honor. If I understand, you'll be asking the second element of 1110. Yes, Your Honor. He says what happened back then and which he had adequate lay testimony for was that, like a bullet, the trauma came at him. And he says that's what happened back then. That's what there's lay testimony about, that the trauma came at him, and that's why he wins. That's how I understand his argument. I have a hard time fitting that into what was actually said in 1979 in the papers. That's correct, Your Honor. But suppose that's clear from the 1979 papers or some way we read it. Then what do you say about his argument that this is all about what happened then? The trauma came at him. You know, that's the only way I can think of it in order to fit it into the scheme. But like a bullet, the trauma came at him in 1967. Well, as you pointed out, that's certainly not what he said at the time, but let's say hypothetically. He said, I'm nervous because of my war wounds. That's what he said in 1979. That's right, Your Honor. So what do you think about this other theory, that this is all about what happened then? This is all about whether trauma happened to him in 1967? Well, another way of asking that question might be, was the RO correct in finding that it was not like the bullet coming at Mr. Pouncil, but rather that, as you pointed out, he alleged that the anxiety was tied to his shrapnel wounds. This was ten years after his separation. And that question is not one which this Court has the jurisdiction to reevaluate. That's a pure question of the application of law to fact. In the Board's very detailed and thorough opinion, it pointed out that the RO had before it the correct facts at the time and reached a determination that was reasonable based upon those facts. And the Veterans Court is – And what is that? Excuse me? And what is that reasonable interpretation? That it had before it primarily two pieces of evidence, the first being the doctor's examination of 1979, which is located at page 43 of the record. And in that evidence, the doctor, under identification of patient, observed that Mr. Pouncil saw combat duty in Vietnam. So that fact, which Mr. Pouncil now alleges the VA somehow overlooked, was properly before the RO. And then later on, the doctor makes the diagnosis of anxiety, neurosis, chronic. Does not in any way indicate that that anxiety was connected to or that there was any nexus to the service at the time. The second piece of evidence was Mr. Pouncil's own statement that the anxiety resulted not from his direct service in combat, but rather from problems he was experiencing in connection with the shrapnel wounds. Where did they come from? Well, those, in turn, did come from his service. Right. However, it would have been very simple for Mr. Pouncil to say, if that had been the case, that his anxiety – The statute and the general law of veterans' cases say that all increased loyalties should be drawn in favor of the veteran. And this specific statute spells it out, but it's a concept the Supreme Court says. And the department continually nitpicks and tries to make an appellate lawyer out of these veterans when they first walk in without counsel for the regional office. Doesn't it appear that the RO got it wrong as a matter of law? No, Your Honor. No. In fact, in 1987, when the VA revisited this question of Mr. Pouncil's possible PTSD and his anxiety, it found that the facts had changed since its initial decision. And at that time, it did recognize a 10% disability rating for PTSD, explicitly explaining that there had been a change in diagnosis and additional evidence had been presented, the condition presumably had worsened, and there was now evidence that – the evidence was just simply different. Based upon the evidence before it at the time, which is how the acute determination has to be made, based upon the law and the record at the time, the RO had before it all of the correct facts and determined that the relaxed evidentiary burden simply did not apply. Now, even if that were an error, even if the RO erred by not giving Mr. Pouncil the benefit of that presumption, that error still is not outcome determinative. Mr. Pouncil says that that's not the question here, and that wasn't essentially the question that he raised in the beginning with his Q claim, but outcome determinative is an essential element of any Q claim. And the entire theory here for why it could possibly have been outcome determinative rests on some sort of failure of a duty to assist, that if that relaxed evidentiary burden had been applied, then presumably the VA would have assisted Mr. Pouncil in developing some sort of nexus evidence. But that argument fails for several different reasons. First of all... The only version of that question over which this Court would have jurisdiction is if the error were one of incorrect legal interpretation. So, for example, Mr. Pouncil's version of the argument that 1154 gives the veteran the benefit of all three, or at least more than just one element of 1110, that 1154 would have given him a presumption as to the nexus. So if there's a misinterpretation of the facts by the RO way back when, that cannot be corrected as a Q? Not as a Q, Your Honor. And it possibly sounds harsh, but Q has been described as a very specific and rare kind of error. And there possibly will be some kinds of errors that simply are not redressable this many years later. But the Q law is very clear that it must be outcome determinative. And Mr. Pouncil's argument, which rests upon a failure of the duty to assist, directly contradicts this Court's precedent from Cook that says that a failure of the duty to assist is not the basis for a Q claim because it necessarily implicates evidence that was not in the record at the time. And a Q claim has to be decided on the evidence that was in the record at the time. In addition, before Mr. Pouncil at the time would have been entitled to any kind of development of evidence by the VA, he would have had to present a well-grounded claim. And an essential element of presenting a well-grounded claim is the presentation of competent medical evidence of nexus. And that was lacking in this case as well. Is that a legal issue or is that a factual issue, as to whether or not there was any problem with nexus? The question whether there was nexus is either factual or application of law to fact. It's not a legal issue to bring back determinations as to whether or not the nexus was established? No, Your Honor. No, Your Honor. It necessarily involves an evaluation of the type of medical evidence that was before the court and weighing of whether that evidence rose to meet particular standards. So we're limited by our standard review? Yes, Your Honor, on the outcome determinants of question. Yes, Your Honor. Can I go back just a little bit to what the RO did in 1979? I thought clearly they said there was no... it wasn't established that his anxiety was related to his combat in 1967. That that was the basis for their finding. Not that his anxiety was minor or anything like that. I thought it was clearly a lack of connection in 1979. Or did I get 1979 mixed up with something else? That sounds correct, Your Honor. Page 41 of the record is the 1979 rating decision, and that states that service connection for anxiety and neurosis cannot be established as the service records are void for this condition and the first mention of the condition. Are void for this condition? Yes, Your Honor. In other words, they don't mention the condition. Okay, well... But he did. Yeah, but he did. I mean, not having records won't do it for the agency because that's the whole point of me, right? Exactly. Okay. So is that the error? Is that an error? If they say the reason we're not awarding this in 1979 is because your record is missing, then that sounds like more of the kind of error that your opposing counsel is alleging. If that observation had been made perhaps in the face of lay testimony by Mr. Pouncil that said I began to suffer these symptoms of anxiety in service and I'm continuing to suffer them and they're connected to my service, then possibly that would be the kind of error in application of 1154 that Mr. Pouncil alleges. But absent the lay testimony that would give rise to the application of 1154, there is no error there. Well, I thought he did give testimony to that effect. No, Your Honor. His statements to that effect. No, Your Honor. His statement was that his... I'll find it in the record here so I can get it. His statement, which is at page 44 of the record, said, I have also had increasing nerve problems, which I believe it directly related to my service-connected disabilities. And at that time in 1979, Mr. Pouncil was service-connected, I believe, for a left knee injury. And he continued to be service-connected for that injury. And then as time went on and the evidence changed and his condition changed, he received service connection. So that's his only testimony of that one little written line in his application. There's nothing else? Not that we're aware of, Your Honor, yes. That was the lay testimony in question, should the presumption or relaxed evidentiary burden have been applied on that basis. And, again, I would reiterate that that question is an application of law to fact. Did the RO correctly apply this statute based upon this fact from the record? But absent this important outcome determinative showing, which Mr. Pouncil has not done in this court, we're left with the pure legal question of interpretation, which Mr. Pouncil concedes was done correctly. And unless there are any other questions, for these reasons and those in our brief, we ask that you affirm the Veterans Court decision. Okay. Court, please. It would be helpful if you could specifically address the point she's making to show where your argument is deficient. Well, the government started by saying there were two pieces of evidence that were considered, and they were both found in the VA examination. One, that he was in combat, and two, that he had a diagnosis of anxiety neurosis. And those were the two key pieces of evidence that the government now stands up in 2007. But in 2007, that's what they said they relied on in 1979. The rating decision, however, only contains one sentence. Service connection for anxiety neurosis cannot be established as service records are void for this condition. That is a clear and unmistakable error in the failure to correctly apply 1154B. As has been correctly pointed out, 1154B was created because there are no service records. So that's the error. And then they add, and it was first mentioned, the first mention of this condition was too remote from service for it to be service connected. That is simply not the correct legal standard. Is that a fractional determination? No, Your Honor. Legal determination. That is a legal determination under 1154B, because what 1154B gives you, and repeatedly Congress repeated it, is the right to a finding of service connection. And what was denied here was the right to that finding. The duty to it in 1979. On what basis were you really laying that groundwork? On the plain language of 1154B. The outcome determinative part comes into play based upon the misinterpretation made by the Veterans Court, because the Veterans Court and the Board relied on the connection to medical nexus. But medical nexus has nothing to do with the finding of service connection. It is a separate issue. The outcome determinative part was the legal right to a finding of service connection. What specifically did he say or present in 1979? There is no record, frankly, of what he said, Your Honor. But that's, again, where the VA plays it fast and loose with their duty to assist, with their duty to fully develop this claim. Now, if all that was in the record was what was in the exam and on his statement in support of claim, then the only thing they can do is rely on the fact that he was a combat veteran and he said he had nerve problems. The question is, was he or wasn't he entitled as a combat veteran to the right to the benefit of the 1154B presumption? Did he say that in 1979? I don't believe he had to say that in 1979. There's nothing to indicate that he said that except the inference that is reasonably made from the notation by the examiner that he was in combat and by the fact that in 1970 they had awarded him service connection for his war wounds that were the result of his having been engaged in combat. Thank you very much, Your Honors. Appreciate your attention.